UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEVEN SAND,

        Plaintiff,

v.                                                                                Case No. 19-C-348

MILWAUKEE COUNTY HOUSE OF CORRECTION,
MICHAEL HAEFMANN,
ARAMARK AMERICAN FOOD SERVICES INC.,
a/k/a ARAMARK CORRECTIONAL SERVICES LLC,
JOHN DOE, JANE DOE, BRAD MEYER, and
MILWAUKEE COUNTY,

        Defendants.

## DECISION AND ORDER

Plaintiff Steven Sand, a practicing Orthodox Jew, filed this action pursuant to 42 U.S.C. § 1983 asserting that the defendants violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, *et seq.*, and the United States Constitution when they failed to offer him meals that satisfy the requirements of Jewish dietary law while he was confined in the Milwaukee County House of Corrections (HOC). Presently before the court is Defendants Michael Hafemann, Officials of the HOC, and the HOC's motion to dismiss certain claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion will be partially granted.

## LEGAL STANDARD

A motion to dismiss tests the sufficiency of the complaint to state a claim upon which relief can be granted. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990); *see* Fed. R. Civ.

P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true and draw all inferences in the light most favorable to the non-moving party. *Gutierrez v. Peters*, 111 F.3d 1364, 1368–69 (7th Cir. 1997); *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991). Rule 8 mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, it must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

**ALLEGATIONS CONTAINED IN THE AMENDED COMPLAINT**

Plaintiff is an Orthodox Jew and believes he is obligated to comply with the dietary laws of his religion. He was incarcerated at the HOC from June 1, 2018, to May 31, 2019, when he was released to a term of probation that will run until May 25, 2023. On the first day of his incarceration, Plaintiff's Rabbi provided the HOC with a letter advising that Plaintiff is an observant Orthodox Jew who eats an exclusively kosher diet and requesting that the HOC provide Plaintiff with "only food that is certified kosher in its original packaging." Am. Compl. ¶¶ 28–29, Dkt. No. 21. Plaintiff also explained on numerous occasions that he is required to adhere to Jewish dietary law.

2

Plaintiff claims that the HOC did not provide him with kosher meals and routinely provided meals that violate the most basic tenets of Jewish dietary law. Plaintiff filed numerous grievances with the HOC complaining that it was failing to provide him with kosher meals. The HOC and Aramark responded to Plaintiff's grievances. On August 20, 2018, Aramark stated the HOC, and not Aramark, was responsible for providing kosher meals. In October 2018, the HOC responded to an August 21, 2018 grievance and offered to allow Plaintiff to bring in his own kosher meals so long as the meals were scanned and Plaintiff signed a liability waiver for the purposes of insulating the HOC from liability in the event the meal made Plaintiff sick. However, the HOC refused or failed to provide Plaintiff with a waiver. Plaintiff had been granted work release and attempted to bring in his own meals, but his food was thrown out when he attempted to return to the HOC.

On October 8, 2018, the HOC called Aramark to inquire about Plaintiff's meal, and Aramark stated that all of the meals provided to Plaintiff were kosher. Plaintiff alleges he received some meals that may have contained kosher parts but many more did not contain any kosher parts. Plaintiff could only eat portions of some of his meals. He claims that, on many days, the caloric intake of the kosher food was not sufficient under the federal guidelines.

On December 13, 2018, Plaintiff drafted a letter to Michael Hafemann, the superintendent of the HOC, advising that he had been denied kosher meals. Plaintiff's Rabbi reached out to Milwaukee County Corporation Counsel to discuss the HOC's failure to provide Plaintiff with kosher meals. The Milwaukee County Corporation Counsel responded on January 11, 2019, advising that the HOC had provided Plaintiff with multiple options but Plaintiff had rejected them. Yet, over a month later, the HOC agreed to provide Plaintiff kosher meals if he agreed to pay for them. Although Plaintiff signed an agreement requiring him to pay for all kosher meals on February

3

25, 2019, the HOC and Aramark still failed to provide him with kosher meals. Plaintiff was advised that if he did not eat the meals he was given, he would be put on suicide watch and placed in solitary confinement.

Plaintiff claims that the HOC's failure to allow him to receive meals compatible with a kosher diet violates RLUIPA. Plaintiff further claims that the refusal of the HOC, its officials, and Aramark to allow Plaintiff to receive meals compatible with a kosher diet violates the free exercise clause of the First Amendment and the equal protection clause of the Fourteenth Amendment to the United States Constitution as well as the free exercise clause of the Wisconsin Constitution. In addition to these claims, Plaintiff asserts a fraud under Wisconsin state law, and he seeks declaratory and injunctive relief, compensatory and punitive damages, as well as attorneys' fees and costs.

## ANALYSIS

Defendants seek partial dismissal of the amended complaint for a number of reasons and also request that the court strike the exhibits attached to the original complaint. As an initial matter, Defendants argue that the court should dismiss the claims against Hafemann in his official capacity and the HOC because they are duplicative of the claims alleged against Milwaukee County. Milwaukee County concedes that Hafemann, acting in his official capacity, and the HOC are its agents and that it is therefore responsible for their actions. Accordingly, the court will dismiss the claims against Hafemann in his official capacity and the HOC as unnecessary and redundant. Defendants also seek to dismiss the RLUIPA claims against all defendants except Milwaukee County. Plaintiff does not dispute that he cannot bring a RLUIPA claim against the individual Milwaukee defendants. Accordingly, Plaintiff's RLUIPA claims against the individual defendants

4

and the HOC, to the extent they were asserted in the amended complaint, are dismissed. The court will address the remaining arguments in turn.

**A. First Amendment and Fourteenth Amendment Claims**

Defendants assert that Plaintiff's First Amendment and Fourteenth Amendment claims against Hafemann and the John Doe officials of the HOC should be dismissed because they are entitled to qualified immunity. Qualified immunity shields government officials performing discretionary functions from claims for damages under 42 U.S.C. § 1983 unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is "clearly established" if its contours are "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Defendants argue that they are entitled to qualified immunity with respect to Plaintiff's First Amendment claim because there is no clearly established right to the ultra orthodox kosher food requirements Plaintiff requests. This argument is a nonstarter for the simple reason that the amended complaint does not assert a right to "ultra orthodox kosher food." Instead, the complaint alleges that "the HOC did not provide the plaintiff with kosher meals, and routinely provided him with meals that violate the most basic tenets of Jewish dietary law." Am. Complt. ¶ 32. Defendants' reliance upon *Andreola v. Wisconsin*, 211 F. App'x 495 (7th Cir. 2006), a case decided on summary judgment after completion of discovery and not on a motion to dismiss under Rule 12(b)(6), is misplaced.

It is also worth noting that, in making this argument, Defendants ignore the fact that Plaintiff has asserted a claim under RLUIPA. Absent RLUIPA, Defendants' argument might prevail, for it is unclear whether the free exercise clause of the First Amendment requires state prisons and county jails to incur the administrative burden and expense of providing meals that meet the wide variety of religious dietary laws to which inmates may claim their sincerely held beliefs entitle them.

In *O'Lone v. Estate of Shabazz*, 482 U.S. 382 (1987), for example, the Court rejected Muslim prisoners' free exercise challenge to prison regulations that precluded them from attending Jumu'ah, a weekly Friday religious service. The challenged regulation prohibited inmates assigned to work outside of the buildings in which they were housed and in which Jumu'ah was held from returning to those buildings during the day. The regulations were adopted because prison officials determined that the return of prisoners during the day resulted in security risks and administrative burdens they deemed unacceptable. *Id.* at 345–46. In upholding the challenged regulations, the Court noted that it had "recently restated the proper standard: '[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Id.* at 349 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Moreover, "evaluation of penological objectives is committed to the considered judgment of prison administrators, 'who are actually charged with and trained in the running of the particular institution under examination.'" *Id.* at 349 (quoting *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)). This "reasonableness test," which is "less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights," is intended "to ensure that courts afford appropriate deference to prison officials" and thereby "ensure[ ] the ability of corrections officials 'to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration.'"

*Id.* It is also intended to "avoid[ ] unnecessary intrusion of the judiciary into problems particularly ill suited to resolution by decree." *Id.* at 349–50 (internal quotations omitted). Given the potentially wide variety of dietary restrictions and the cost of compliance, including in some cases the cost of constructing separate kosher kitchens, *Jones v. Carter*, 915 F.3d 1147, 1148 (7th Cir. 2019), it is less than clear that accommodating inmates' religious diets is constitutionally mandated. As to this issue as well, however, the record is insufficiently developed to permit a ruling on the issue of qualified immunity.

Plaintiff's RLUIPA claim seems to rest on more solid ground. Under RLUIPA, a county jail or state prison that receives federal funds cannot "impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... unless the [it] demonstrates that [it] ... (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1; *see also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 694 (2014). Whether or not an inmate's meal plan violates RLUIPA depends on whether the prison imposes a substantial burden on the exercise of the prisoner's religion and whether the imposition of a burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. *Jones*, 915 F.3d at 1148–49.

Plaintiff has alleged sufficient facts to support such a claim and withstand a Rule 12(b)(6) motion to dismiss based on qualified immunity. Qualified immunity is an affirmative defense and, absent a more developed record, the court is unable to determine whether it has any application here. An immunity defense is usually fact-intensive, and dismissal on this ground at the pleading stage is rare. "[A] plaintiff is not required to plead factual allegations that anticipate and overcome a

7

defense of qualified immunity." *Alvarado v. Litscher*, 267 F.3d 648, 651–52 (7th Cir. 2001) (quoting *Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)). In this case, Plaintiff alleges that he never met with prison officials regarding his request for kosher meals despite numerous requests to do so. At this point, it is unclear whether Plaintiff's request implicates the costs, practical problems, or security concerns presented in *Andreola* or whether accommodating Plaintiff is not feasible. Accordingly, Defendants motion to dismiss Plaintiff's claims under RLUIPA and the Free Exercise Clause of the First Amendment based on qualified immunity will be denied.

Defendants also assert that Plaintiff's equal protection claim should be dismissed because Plaintiff's claim is not pled with sufficient specificity to overcome Defendants' claims of qualified immunity. The Equal Protection Clause prohibits a state from denying "to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. To state an equal protection claim, a plaintiff must establish that a state actor treated him differently from others similarly situated because of his membership in a particular class and that the state actor did so purposefully. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000) (citing *Washington v. Davis*, 426 U.S. 229, 239–42 (1976)). A "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated against him.'" *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir. 1987) (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)); *see also Briscoe v. Kusper*, 435 F.2d 1046, 1052 (7th Cir. 1970) (noting that the right of equal protection "has long been limited to instances of purposeful or invidious discrimination rather than erroneous or even arbitrary administration of state powers. The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action."). Discriminatory purpose "implies that

8

the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) (citation omitted). "To be similarly situated, 'comparators must be . . . prima facie identical in all relevant respects.'" *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 945 (7th Cir. 2009) (quoting *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005)).

Plaintiff alleges that Defendants arbitrarily treat inmates who request halal diets differently than inmates who request kosher diets. He claims Defendants created clearly defined rules, procedures, and meal plans for meal service during the Muslim holiday of Ramadan in order to accommodate Muslim inmates but did not institute any rules for meal service during Passover. In essence, Plaintiff alleges that Defendants discriminated against Jewish inmates by refusing to accommodate their religious dietary laws in the same way that they accommodated the religious dietary laws of Muslims. Again, at this stage of the proceedings, this is enough to state an equal protection claim. Defendants' arguments again ignore the fact that we are at the pleading stage. A comprehensive summary of the evidence Plaintiff intends to offer to prove his case is not required in order to state a claim. Given the entirety of the allegations of the complaint, it is sufficient.

**C. Retaliation Claim**

Defendants assert that Plaintiff has failed to state a retaliation claim against Hafemann and the John Doe officials of the HOC. In order to prevail on a First Amendment retaliation claim under § 1983, a plaintiff must allege that (1) his speech was protected under the First Amendment, (2) the defendants, acting under color of state law, took adverse action against him, and (3) his constitutionally protected speech was a substantial or motivating factor for the defendants' actions.

9

*See Mt. Healthy City Board of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Williams v. Seniff*, 342 F.3d 774, 782 (7th Cir. 2003). Plaintiff has not alleged a retaliation claim. Plaintiff alleges that he repeatedly asserted his constitutional right to exercise his religion throughout his confinement at the HOC and that the HOC and its officials retaliated against him by denying him Huber release privileges from May 27 through May 31. Am. Compl. ¶¶ 79–80. With respect to the element of causation, Plaintiff asserts that his Huber release privileges would not have been denied during the week of May 27 through May 31 if he had not complained about his inability to exercise his sincerely held religious beliefs. *Id.* ¶ 81. This allegation is a recital of an element of a cause of action and a conclusory statement that is insufficient to state a claim upon which relief can be granted. *Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing *Twombly*, 550 U.S. at 555)). The amended complaint does not plausibly allege facts to show that the deprivation in his Huber privileges was in retaliation for or motivated by his complaints. Accordingly, Plaintiff has failed to state a retaliation claim and this claim will be dismissed.

**D. Fraud Claim**

Defendants assert that Plaintiff fails to state a claim of fraud based on Wisconsin's food labeling regulations. *See* Wis. Stat. §§ 97.03; 97.56(2)(b); 100.20; 100.183; Wis. Admin. Code ATCP §§ 90.02; 90.10. Chapter 97 of the Wisconsin Statutes regulates food, lodging, and recreation, and Chapter ATCP 90 of the Wisconsin Administrative Code regulate fair packaging and labeling. Nothing in Chapter 97 of the Wisconsin Statutes or Chapter ATCP 90 suggest that these statutes and regulations create private rights of action. Enforcement of Chapter 97 lies with the department of agriculture, trade, and consumer protection, not private litigants. *See* Wis. Stat.

§§ 97.12; 97.72. Plaintiff provides no authority for a private right to enforce Chapter 97 or Chapter ATCP 90. Without establishing that the Wisconsin legislature intended to create a private civil remedy, Plaintiff cannot seek relief in this court. *See Smith v. Gerber*, 64 F. Supp. 2d 784, 786 (N.D. Ill. 1999) ("Courts seldom imply a private right of action where none appears in the statute, for a strong presumption exists against [their] creation." (citation omitted)). Accordingly, Plaintiff's claims under Chapter 97 and Chapter ATCP 90 will be dismissed. As to Plaintiff's remaining fraud claims, neither Milwaukee County nor the individually-named defendants are engaged in trade or trade competition within the meaning of Wis. Stat. § 100.20 or advertise any food product within the meaning of Wis. Stat. § 100.183. These claims will therefore be dismissed as well.

## CONCLUSION

For these reasons, Defendants' motion to dismiss (Dkt. No. 23) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The motion is granted to the extent that (1) Plaintiffs' claims against the defendants in their official capacities, (2) the RLUIPA claims against Hafemann in his official capacity and the HOC, (3) the retaliation claims against Hafemann and the John Doe defendants, and (4) the fraud claims are dismissed. The motion is denied in all other respects.

**SO ORDERED** this __18th__ day of November, 2019.

s/ William C. Griesbach  
William C. Griesbach, District Judge  
United States District Court - WIED